UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

MELISSA ATWOOD,

Plaintiff,

-against-

BARROW STREET NURSERY SCHOOL AT GREENWICH HOUSE INC., and NICOLE PAPPAS FERRIN,

Defendants.
----------------------------------------------------------x

Case No. 23-cv-4513

**COMPLAINT**
**AND JURY DEMAND**

Plaintiff Melissa Atwood ("Plaintiff" or "Ms. Atwood"), by her attorneys, Menken Simpson & Rozger LLP, complaining of Defendants Barrow Street Nursery School at Greenwich House Inc. ("BSNS" or "the school"), and Nicole Pappas Ferrin ("Ferrin"), alleges:

## PRELIMINARY STATEMENT

1. For nearly a decade, Melissa Atwood has been an assistant teacher at the Barrow Street Nursery School, where she has touched the lives of countless children and earned the admiration of many parents.

2. BSNS is a self-described "progressive" nursery school that charges nearly $40,000 per school year for up to six hours a day. Only 15% of the children who attend the school receive some form of tuition assistance.

3. The school's website touts how it "draws strength from the diverse perspectives and backgrounds of our joyful children, dedicated teachers and engaged families."

4. In February 2022, BSNS added another diversity feather to its cap: Melissa Atwood announced that she was pregnant and would be raising her child as a single mother. She

was poised to be the only unmarried, unpartnered woman teacher at the school in the eight years she had been employed there.

5. But instead of embracing Ms. Atwood's exciting news and her status as a future single parent, the Director of BSNS, Nicole Pappas Ferrin punished her. Within weeks of disclosing her pregnancy to Ferrin, she demoted Ms. Atwood, cut her pay, and assigned her a schedule for the following school year that would prevent her from seeing her baby in the evening, thus depriving her of a daily bedtime routine with her child. Faced with accepting the demotion or losing her job and benefits, Ms. Atwood had no choice but to accept it.

6. Then, in April 2023, just days before Ms. Atwood's leave was scheduled to end, Ferrin told her over the phone that her employment would be terminated in August 2023 and that she could leave immediately if she promised not to sue the school or anyone associated with BSNS. Ms. Atwood rejected the offer and returned to work in her diminished role.

7. After reeling from months of emotional distress due to her discriminatory demotion, and now facing the loss of her job and health insurance at a time when she needs it most, Ms. Atwood now has no choice but to resort to the legal system to obtain justice for the flagrant, callous discrimination she suffered due to her status as a single parent.

8. This action is now brought to remedy claims of pregnancy (gender), marital, partnership and caregiver discrimination under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*

9. Ms. Atwood seeks economic, compensatory and punitive damages, as well as attorney's fees, costs and all other appropriate relief pursuant to local law.

## JURISDICTION AND VENUE

10. The Court has jurisdiction of this action under 28 U.S.C. § 1332 in that the parties are citizens of different states (i.e. the Defendants are New York citizens and Plaintiff is a New Jersey citizen) and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

11. As Defendant BSNS is located in, and regularly does business within, the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 42 U.S.C. § 2000e-5(f)(3). Additionally, the acts that form the basis of this lawsuit occurred within this jurisdiction.

12. Contemporaneously with instituting this lawsuit, Plaintiff submitted copies of the Complaint to the New York City Commission on Human Rights and Department of Law.

## PARTIES

13. At all times relevant to this action, Ms. Atwood was a resident of Union County, New Jersey. She has been a teacher at BSNS since 2014.

14. Defendant Barrow Street Nursery School at Greenwich House Inc. ("BSNS") is a not-for-profit organization located in the West Village section of Manhattan in New York City. BSNS is a nursery school serving children aged two through five years old. BSNS currently employs Ms. Atwood part-time as a "universal teacher." Prior to announcing her pregnancy, Ms. Atwood was a full-time employee in the role of Assistant Teacher.

15. At all times relevant to this action, Defendant BSNS was Atwood's employer within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-102.

16. Defendant Nicole Pappas Ferrin is an adult individual who, on information and belief, resides in New York City. During the relevant time period, Ferrin had the authority to hire, fire, and determine the conditions of Ms. Atwood's employment, including which position Ms. Atwood held.

17. Defendant Ferrin was, at all relevant times, a BSNS employee and Atwood's supervisor, and was therefore Ms. Atwood's employer within the meaning of the NYCHRL, N.Y.C. Admin. Code § 8-102.

## FACTUAL ALLEGATIONS

### Atwood's Successful Career at BSNS

18. Ms. Atwood joined BSNS in June 2014 as an assistant teacher in one of BSNS's 3s/4s class.

19. Prior to obtaining that position, Ms. Atwood, a graduate of a top-tier liberal arts college, began her career at an agency devoted to the well-being of at-risk children in Philadelphia before spending seven years helping run her family's retail business.

20. In 2011, she moved to New York City to pursue a career aligned with her passion: caring for children.

21. She first served as a teacher at the Park Place Daycare Center in Brooklyn, and then worked as an assistant arts teacher at the Philip Coltoff Center Greenwich Village.

22. She became involved with Greenwich House, the umbrella organization under which BSNS is housed, in 2012 when she spent two years as an Assistant Camp Director and Teacher at the Greenwich House After School and Summer Arts Camp.

23. Upon her arrival at BSNS in 2014, she made an immediate impact on the students and school community.

24. Over the course of her nearly decade of service, she has received countless compliments and notes of praise from colleagues and parents alike. She has sustained relationships with parents and their children who have long since moved on to elementary school. Some parents have even offered Ms. Atwood complimentary stays in their vacation homes.

25. Her superiors at BSNS also acknowledged her value to the BSNS community, as reflected in the uniformly solid performance reviews Ms. Atwood has received over the years.

Atwood's Advocacy for Diversity, Equity and Inclusion at BSNS

26. Despite being located in one of the most diverse cities in the country, both BSNS's parent community and its faculty and administration are overwhelmingly white. Ms. Atwood successfully led the charge for BSNS to incorporate Diversity, Equity, and Inclusion ("DEI") work into its curriculum and represented the school at the NYSAIS People of Color Conference.

27. Ms. Atwood also did a great service to BSNS by speaking up and educating her white superiors when she herself was the victim of race discrimination.

28. Ms. Atwood, who is of Puerto Rican heritage and a person of color, was made to feel like an "other" in 2016 by Ferrin, the white Director of BSNS. Ferrin inquired about where Ms. Atwood's "family was from," an inappropriate question that caused Ms. Atwood and those observing the conversation visible discomfort.

29. Rather than make a complaint to Human Resources ("HR"), Ms. Atwood instead met directly with Ferrin and Bonnie Maloney, a white BSNS administrator. She educated these white leaders about the impact of this microaggression, explaining how it made her feel.

30. Despite this restorative approach, Ferrin became defensive, claiming that she asks "everyone this question"—an assertion contradicted by some of Ms. Atwood's white colleagues.

31. Additionally, in 2019, Ms. Atwood learned that a fellow assistant teacher, a white woman who was less experienced than Ms. Atwood and new to the school, made a significantly higher salary than Ms. Atwood, who was in her sixth year at BSNS.

32. Ms. Atwood spent months ruminating over how to remedy this inequity, even consulting confidentially with administrators about how to address the problem with Ferrin. While Ms. Atwood told these colleagues that she believed she was being paid less due to her race, she was advised that Ferrin "would not take it well," and instead came up with another justification to ask for a raise.

33. With her combined excellent job performance and invaluable commitment to speaking up for equity and inclusion, by February of 2022 Atwood had no reason to believe BSNS would demote her.

Ms. Atwood Announces Her Pregnancy and is Immediately Demoted

34. A single woman in her early 40s, in 2021 Ms. Atwood made the carefully considered decision to fulfill her lifelong dream of becoming a mom.

35. In doing so, she took on the enormous burden of juggling her demanding job (including her substantial commute to work from New Jersey) and raising a child without the help of a partner.

36. She had no doubt that giving birth to and raising a child as a single parent would inevitably change her relationship with work. However, she never imagined that BSNS would take action against her based on her status as a future or present single parent.

37. In late 2021, Ms. Atwood received the joyous news that she was pregnant and was due in August 2022.

38. Ms. Atwood officially announced her pregnancy at work in early February 2022, although prior to that she had already told the news to a few colleagues, close friends and BSNS parents with whom she was close.

39. She learned from another parent that in late January that Ferrin already knew about her pregnancy. That parent actually sent a text message to Ms. Atwood relaying a conversation between Ferrin and the parent warning her that Ferrin knew of her pregnancy and suggested that Ms. Atwood's teaching position was up in the air "[s]ince people are having babies/personal stuff going on."






40. The information the parent shared was accurate.

41. Within just *three weeks* of Ms. Atwood announcing her pregnancy, Ferrin demoted her from assistant teacher to “universal teacher,” cutting Ms. Atwood’s hours and pay.

42. Ferrin’s pretextual explanation for this demotion was that Ms. Atwood and her co-teacher were “too strong a team.” Therefore, she went on, Ms. Atwood would need to fill the role of “universal teacher,” meaning she would float from room to room.

43. Notably, Ferrin told Ms. Atwood that her new hours would be 10 am to 6:30 pm. Ferrin, a parent herself, undoubtedly knew that this work schedule would prevent Ms. Atwood from putting her future child to bed.

44. Ms. Atwood saw Ferrin’s gambit for what it was—a cynical ploy to induce Ms. Atwood to leave so Ferrin could hire an assistant teacher who did not carry the burden of being a single parent.

45. Still, Ms. Atwood pushed back and refused to go quietly. She sent the following heartfelt and diplomatic email on April 29, 2022, in which she begged for a work schedule that would allow her to also be a mom to her future child:

**From:** Melissa Atwood <matwood@barrowstreetnursery.org>
**Sent:** Friday, April 29, 2022 8:56 AM
**To:** Barrow Street <admin@barrowstreetnursery.org>; Administration <administration@barrowstreetnursery.org>
**Subject:** Next year

Hello,

After speaking through some concerns with Samson during our team meeting he encouraged me to write an email to shed more light on the hardship that the schedule change will bear on me next year once my son is born.
It creates a conflict with seeing/caring for my son and specifically in finding childcare at the late hour at which I'll be arriving home.
Moreover it would also conflict with my strong desire to begin my masters program as most programs run from 7-10pm (or earlier).
With my day at Barrow ending at 6pm my commute will get me home at 7:45pm.
This would get me home an hour after most daycare centers are typically open (meaning I wouldn't arrive at the daycare until 8pm) and given my modest salary I can't afford a private caregiver who can work around the schedule.
Additionally as you know 7:30 is typically when a child's nighttime routine ends putting into question my ability to put into place this foundational ritual that establishes a rhythm of predictably, safety and continuity for an infant.
It's a painful irony for me to reflect on the incongruity of Barrow's mission and how it cares for the children and parents here and the impact this would have on me and my family as someone that has supported the mission of Barrow for 10 years.
I'm appealing to your humanity and empathy that you consider another possibility for next year. It would make all the difference in the world for me.

My intention is not to criticize but rather this is a personal appeal that I hope can be given thoughtful consideration. I imagine anyone in my situation would feel this way. I feel torn up inside and hurt that after my many years of giving so much of myself in care of the children here and knowing it's had such a profound impact on the families to feel as if my circumstances are not being offered the same kind of consideration.

Warmly,
Melissa

46. But instead of empathizing with her situation, BSNS and Ferrin acted like they were doing her a favor, telling her that they "created a position for her." The "position" was a demotion and with a pay decrease.

47. Pregnant and desperate to keep her job, Ms. Atwood had no choice but to accept the demotion and pay cut.

48. While other BSNS employees have had children and returned to work without a demotion over the course of Ms. Atwood's eight-year tenure at the school, Ms. Atwood is the only person who was unmarried/unpartnered and pregnant with the intent of raising her child as a single parent.

49. BSNS's flagrantly discriminatory demotion of Ms. Atwood while she was pregnant and preparing to be a first-time mother, all on her own, caused her enormous emotional distress for which she sought counseling from mental health professionals. In addition, she has experienced stress-related gastrointestinal pain and discomfort.

50. To add insult to injury, it has tainted what Ms. Atwood thought would be—and should have been—a joyous, rich time with her new baby.

Ms. Atwood's Discriminatory Termination

51. Ms. Atwood gave birth to a baby boy on August 8, 2022. She took her leave beginning August 28, 2022 and was scheduled to return on April 24, 2023.

52. Although she would be returning to a diminished role, the week of April 11 she emailed her superiors expressing excitement at being back in the classroom.

53. After days went by without a response from Defendants, Ferrin asked to schedule a call with Ms. Atwood and Jose Manuel Gonzalez, the Director of People and Culture at Greenwich House, the non-profit under which BSNS is housed.

54. The call took place on April 18, 2023.

55. To Ms. Atwood's dismay and horror, Ferrin announced that she was firing Ms. Atwood effective at the end of August 2023.

56. Disingenuously, BSNS framed the termination as "an opportunity" for Ms. Atwood to "stay home" and offered her a modest severance package equivalent to seventeen weeks of pay and benefits—less than two weeks per year of service to the school. In exchange, BSNS would require Ms. Atwood to release her legal claims against the school, "its parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, officers, directors and agents."

57. Defendants' announcement that they were terminating Ms. Atwood's employment caused her severe emotional distress.

58. Still, Ms. Atwood rejected the offer and returned to work on April 26, 2023, in her diminished position as "universal teacher."

59. The emotional distress she is continuing to experience as a result of her humiliating demotion and impending termination has not only caused her to feel a sense of hopelessness and despair, but is also affecting her ability to breastfeed her baby.

**FIRST CAUSE OF ACTION**
**(Gender, Marital Status and Partnership Status Discrimination, Against All Defendants)**
**New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.***

60. Plaintiff repeats and incorporates by reference all of the above allegations as if fully set forth herein.

61. Plaintiff, who was an unmarried, unpartnered pregnant woman, belongs to a protected class on the basis of her gender, marital and partnership status.

62. Defendants have repeatedly discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment, in violation of N.Y.C. Admin. Code §§ 8-107(1)(a) by, among other practices, demoting her due to her status as an unmarried, unpartnered pregnant person.

63. As a result of Defendants' intentional discrimination, Plaintiff has suffered damages in the form of emotional distress and lost income and is entitled to reinstatement to her former position, backpay, front pay, attorney's fees, and any such other declaratory or injunctive relief the Court deems proper.

64. Defendants' discriminatory practices were committed with malice or reckless indifference to Plaintiff's statutorily protected rights.

**SECOND CAUSE OF ACTION**
**(Marital Status, Partnership Status, and Caregiver Discrimination, Against All Defendants)**
**New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.***

65. Plaintiff repeats and incorporates by reference all of the above allegations as if fully set forth herein.

66. Plaintiff, who is and was an unmarried, unpartnered single mother caring for her new baby, belongs to a protected class on the marital, partnership and caregiver status.

67. Defendants have repeatedly discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment, in violation of N.Y.C. Admin. Code §§ 8-107(1)(a) by, among other practices, informing her that she would be terminated effective in August 2023.

68. As a result of Defendants' intentional discrimination, Plaintiff has suffered damages in the form of emotional distress and is entitled to attorney's fees, compensation for her emotional distress, future economic damages in the form of backpay and front pay, a withdrawal of her termination and restoration to her prior position of assistant teacher, and any such other declaratory or injunctive relief the Court deems proper.

69. Defendants' discriminatory practices were committed with malice or reckless indifference to Plaintiff's statutorily protected rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

a. Declaring the acts, policies, and practices complained of herein to be violations of the New York City Human Rights Law;

b. Enjoining and permanently restraining these violations;

c. Directing Defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated;

d. Directing Defendants to make Plaintiff whole for all earnings and other amounts or benefits she would have received but for Defendants' discriminatory, retaliatory, and unlawful conduct, including, but not limited to, wages, overtime, bonuses, and other lost benefits;

e. Directing Defendants to pay Plaintiff compensatory damages for her emotional distress;

f. Directing Defendants to pay Plaintiff punitive damages pursuant to N.Y.C. Admin. Code § 8-502(a).

g. Awarding Plaintiff such interest as is allowed by law;

h. Awarding Plaintiff reasonable attorney's fees and costs; and

i. Granting Plaintiff such other and further relief as the Court deems necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: May 30, 2023
New York, New York

By: MENKEN SIMPSON & ROZGER LLP

*/s/Scott Simpson*
Scott Simpson
80 Pine Street, 33rd Floor
New York, NY 10005

Tel.: (212) 509-1616
Fax: (212) 509-8088
ssimpson@nyemployeelaw.com

*Attorneys for Plaintiff*